```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF PUERTO RICO
```

URSULA VASQUEZ-BALDONADO,

   **Plaintiff**,

            **v.**                          CIVIL NO. 10-1251 (FAB)

ALICIA DOMENECH, *et al.*,

   **Defendants.**

                       **MEMORANDUM AND ORDER**[1]

BESOSA, District Judge.

   Before the Court is plaintiff's motion for default judgment. (Docket No. 14.)  Having considered the complaint and the arguments contained in plaintiff's motion, the Court **DENIES WITHOUT PREJUDICE** the motion for default judgment.

                              **DISCUSSION**

**I.   Background**

   **Procedural Background**

   On March 24, 2010, plaintiff Ursula M. Vazquez-Baldonado ("Baldonado" or "plaintiff") filed a complaint against Alicia Domenech ("Domenech") and Jose M. Reyes-Reyes ("Reyes")

---

[1] Alyssa Iglesias-Serpa, a third-year student at University of North Carolina Law School, assisted in the preparation of this Memorandum and Order.

Civil No. 10-1251 (FAB)                                                 2
_____

(collectively "defendants")[2] alleging actions in violation of the Racketeering Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1964.[3]  (Docket No. 1 at ¶¶ 1-4.)  On September 20, 2010, the Clerk entered default against Domenech and Reyes. (Docket No. 13.)  On September 21, 2010, plaintiff filed a motion for default judgment against both Domenech and Reyes.  (Docket No. 14.)

**Factual Background**

The following factual findings are derived from the complaint:

Plaintiff is a resident of Puerto Rico.  She sought an employment visa from Domenech, who presented herself as a Florida attorney authorized to appear before the Department of Homeland Security ("DHS") for immigration purposes.  (Docket No. 1 at ¶ 11.) In 2007, plaintiff and Domenech had several telephone conversations concerning plaintiff's employment and immigration claims.  (Docket No. 1 at ¶ 29.)  On July 28, 2007, plaintiff entered into a verbal

_____

[2] The complaint also includes an anonymous defendant, ABC Insurance Co., alleged to be Domenech's insurance carrier. (Docket No. 1 at ¶ 7.)  There is no indication in the record, however, that this defendant was ever identified, named, or served.  Because it has been well over 120 days since the filing of the complaint, any claims against this anonymous defendant are **DISMISSED WITHOUT PREJUDICE.**  See Fed.R.Civ.P. 4(m); (Docket No. 1.)

[3] The complaint also raises numerous Puerto Rico law claims. (See Docket No. 1 at ¶ 51.)  Plaintiff briefly lists a series of tort claims, but has failed to support those claims with appropriate factual allegations.  (Docket No. 1 at ¶ 51.) Therefore, the related state law claims referred to in the complaint are **DISMISSED WITH PREJUDICE.**

Civil No. 10-1251 (FAB)                                                 3

contract with Domenech, paying Domenech a total of $2,840 for services including a "fingerprint fee." (Docket No. 1 at ¶ 12.) Plaintiff was given a handwritten receipt, which inaccurately stated that the funds given to Domenech were a personal loan and not payment for legal services. (Docket No. 1 at ¶ 13.)

Plaintiff has allegedly conducted similar schemes on others. Plaintiff identified three individuals in Puerto Rico named "Matia," "Alex," and "Aneud," who paid Domenech $7,000, $3,500, and $3,500, respectively, in addition to a "fingerprint fee." (Docket No. 1 at ¶ 14.) Prior to meeting plaintiff, Domenech also traveled to the Dominican Republic offering similar immigration services. Domenech collected payments from plaintiff's cousins, Nelson Paulino-Maldonado, Julio Paulino-Maldonado, Rolirson Paulino-Maldonado, and Raul Paulino-Reinoso. In 2007, each respectively paid $4,000, $5,000, $6,000, and $7,500 for representation. (Docket No. 1 at ¶ 15.) Domenech also appropriated $4,800 and $7,000 from plaintiff's brothers Alfredo Vazquez and Marino Vazquez. (Docket No. 1 at ¶ 16.) To date, no documents have been filed with DHS on their behalf. (Docket No. 1 at ¶ 19.)

Domenech also represented plaintiff in an employment claim and allegedly deposited a check (Santander Check No. 3754912 dated November 9, 2007) for plaintiff in the amount of $125,000 on November 12, 2007. (Docket No. 1 at ¶ 20-21.) Plaintiff was unaware of the value of the check and was told by Domenech that it

Civil No. 10-1251 (FAB)                                                4

totaled $62,000.  Domenech thus appropriated $63,000, only allowing Baldonado to receive $50,000 at the time, with the remaining $12,000 to be issued upon leaving the country.  (Docket No. 1 at ¶ 22.)

Due to plaintiff's legal status, she was unable to cash checks.  Therefore, Domenech issued a $50,000 check (Check No. 3760525) dated November 20, 2007 to Reyes, her boyfriend at the time.  (Docket No. 1 at ¶ 23.)  Reyes attempted to issue a check for $40,000, on plaintiff's behalf, for the purchase a property in the Dominican Republic.  (Docket No. 1 at ¶ 25.)  When the transaction fell through, Reyes put a stop payment on the check, but never returned the funds to plaintiff.  (Docket No. 1 at ¶ 26.)

Domenech was investigated by Agent Hector Diaz (Badge No. 13093) from the Carolina Precinct CIC of the Puerto Rico Police Department (PRPD) and Assistant District Attorney Alma Mendez for defrauding undocumented persons seeking legal status petitions.  (See Docket No. 1 at ¶¶ 31-32.)  On October 19, 2010, Domenech was arrested for state criminal charges and an outstanding warrant.  (Docket No. 16 at ¶ 1.)  On November 10, 2010, she was indicted on 11 counts by a federal grand jury for impersonating a federal officer and alleging to file immigration proceedings in exchange for money.  (Docket No. 16 at ¶ 2.)

Plaintiff claims she suffered monetary, emotional, and psychological damage as a result of defendant's acts. (Docket No. 1 at ¶¶ 40, 42, 44, and 48.)

## II.  Legal Analysis

### A.  Default Judgment Standard

Pursuant to Rule 55(b), a plaintiff "must apply to the court for a default judgment" where the amount of damages claimed is not a sum certain. When necessary to effectuate judgment, "the court may conduct hearings or make referrals" for numerous purposes, including determin[ing] the amount of damages." Fed.R.Civ.P. 55(b). Entry of default, however, "'constitutes an admission of all facts well-pleaded in the complaint'" and precludes a defaulting defendant from contesting liability. See Benitez-Ruiz v. Hosp. Buen Pastor, No. 03-1330, 2009 WL 2151285 at *2 (D.P.R. July 14, 2009) (quoting Metropolitan Life Ins. Co. v. Colon Rivera, 204 F.Supp.2d 273, 274-75 (D.P.R. 2002)); see also In re The Home Restaurants, Inc., 285 F.3d 111, 114 (1st Cir. 2002) ("[I]t is precisely the right to contest liability that a party gives up when it declines to participate in the judicial process."). The court may, however, "examine a plaintiff's complaint to determine whether it alleges a cause of action." Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992).

### B.  Racketeer Influenced and Corrupt Organizations Act (RICO) Liability

Plaintiff alleges defendants have conspired, conducted, and participated in defrauding and extorting plaintiff's assets in violation of Title 18 U.S.C. § 1964 of RICO.[4]  Pursuant to 18 U.S.C. § 1962(c), a plaintiff must allege each of the following in order to state a claim:  (1) conduct (2) of an enterprise, (3) through a pattern (4) of racketeering activity.  Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496, 105 S.Ct. 3275, 3285 (1985).  To prove a RICO conspiracy, a plaintiff must show (1) the existence of an enterprise; (2) that each defendant knowingly joined the enterprise; and (3) that each defendant agreed to commit, or in fact committed, two or more predicate acts.  See Feinstein v. Resolution Trust Corp., 942 F.2d 34, 41 (1st Cir. 1991); see also United States v. Angiulo, 847 F.2d 956, 964 (1st Cir.), *cert. denied*, 488 U.S. 852 (1988).

Based on the cursory legal analysis in plaintiff's motion, it is not immediately clear that Baldonado's factual allegations support the liability of both defendants.  The motion

---

[4] Pursuant to section 1964(a) of RICO, the United States has jurisdiction to prevent violations of section 1962 of the same statute.  Section 1962 makes it unlawful "for any person employed or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs though a pattern of racketeering activity . . . ."  Under section 1962(d) it is unlawful to conspire in violation of section 1962(c).

Civil No. 10-1251 (FAB)                                                        7

for default judgment does not specifically show how the allegations in the complaint support a valid RICO claim. Aside from its general brevity, there are four key issues which the motion fails to address in adequate detail.

First, the motion does not point out which parts of the complaint establish the existence of an enterprise. An enterprise may be composed of "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961 (4). The complaint "must allege the existence of a 'person' distinct from the 'enterprise'" itself. Doyle v. Hasbro, Inc., 103 F.3d 186, 190-91 (1st Cir. 1996) (citing Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44-45 (1st Cir. 1991); Arzuaga-Collazo v. Oriental Fed. Sav. Bank, 913 F.2d 5, 6 (1st Cir. 1990)). It is uncertain from the facts alleged in the complaint whether Domenech was acting alone or involved with a union of individuals associated-in-fact. (Docket No. 1 at ¶ 12.) The complaint simply references Domenech's personal actions without clearly indicating whether an enterprise, distinct from the named defendants, existed.

Second, plaintiff's motion leaves in significant question whether the actions alleged in the complaint constitute acts establishing a pattern of activity. Plaintiff must demonstrate *at least two* related predicates "that amount to, or threaten the likelihood of, continued criminal activity." See H.J. Inc. v. Nw.

Civil No. 10-1251 (FAB)                                                          8

Bell Tel., Co., 492 U.S. 229, 229, 109 S.Ct. 2893, 2895-96 (1989). Although the complaint lists a series of predicate and non-predicate acts, it appears that plaintiff only provides some factual support for wire fraud. (See Docket No. 1 at ¶ 10, 17, and 29.); Feinstein, 942 F.2d at 42 ("It is not enough for a plaintiff to file a RICO action, chant statutory mantra, and leave the identification of the predicate acts to the time of trial."). Plaintiff's cursory statements regarding wire fraud may not provide sufficient detail concerning the communications. Plaintiff must plead with particularity when and where the wire communications took place, in addition to what information was exchanged. Fed.R.Civ.P. 9(b); See Feinstein, 942 F.2d at 42 (quoting New England Data Serv., Inc. v. Becher, 829 F.2d 286, 292 (1st Cir. 1987) ("'[M]erely stat[ing] conclusory allegations of mail and wire fraud . . . with no description of any time, place or content of the communication' does not satisfy the pleader's burden.")). It is not clear from the information provided whether the pattern requirement has been satisfied in this case, because the factual allegations do not clearly support any additional predicate acts or threat of continued criminal activity.

Third, it is not apparent whether the continuity requirement has been met, because the complaint's factual allegations are unclear regarding the span of time during which the alleged acts occurred. According to the complaint, the actions

Civil No. 10-1251 (FAB)                                                 9

occurred in July and November 2007.  In general, a few weeks or months do not satisfy the "continued criminal activity" requirement, unless it spans over an "open-ended period yet to come."  See Feinstein, 942 F.2d at 45.  The acts must be similar, related, or encompass multiple criminal episodes over a significant period of time.  See Apparel Art Int'l., Inc. v. Jacobson, 967 F.2d 720, 723 (1st Cir. 1992).  The complaint's vague references to events occurring "in 2007" and omission of relevant dates appear insufficient to establish continuity or the likelihood of future occurrences.  (See Docket No. 1 at ¶¶ 14-17.)  The motion for default judgment does not serve to clarify this issue, thus making it difficult to determine whether sufficiently related predicate acts existed over a significant period of time.

Lastly, plaintiff does not explain how the facts alleged satisfy the elements of a conspiracy.  Plaintiff must show (1) the existence of enterprise; (2) that each defendant joined the enterprise; and (3) that each defendant agreed to commit, or in fact committed two or more predicate acts as part of his participation in the enterprise.  See Angiulo, 847 F.2d at 964.  As discussed above, the existence of an enterprise is far from evident in the complaint. Plaintiff's factual allegations do not appear to support the requisite showing that defendants actually joined an enterprise or agreed to commit two or more predicate acts.  Id. Furthermore, plaintiff lists wire fraud as a predicate act, but the

Civil No. 10-1251 (FAB)                                              10
_____

complaint only provides vague factual support for Domenech's fraudulent use of telephone communications. Although plaintiff also addresses Reyes' appropriation of plaintiff's funds, she has not explained how this single action relates back to an enterprise or pattern of racketeering activity. (Docket No. 1 at ¶ 26.); See McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc., 904 F.2d 786, 794 (1st Cir. 1990) (stating that the mere fact that operation is illegal does not render it a pattern of racketeering activity); see also Feinstein, 942 F.2d 34, 44 n. 11 (1st Cir. 1991) (stating that plaintiff's belief that acts are part of a common scheme are not sufficient to satisfy a RICO pattern requirement). Without further clarification, plaintiff has not given the Court a clear basis to determine that defendants were part of a RICO conspiracy.

## CONCLUSION

For the reasons expressed above, the Court **DENIES WITHOUT PREJUDICE** plaintiff's motion for default judgment. No later than **June 30, 2011,** plaintiff may file a renewed motion for default judgment which must explain, with **detailed** legal analysis, how the allegations in the complaint support a valid RICO claim. If plaintiffs fail to do so, the Court may dismiss this case for want of prosecution. Once that motion has been filed, the Court may require plaintiff to present evidence at a hearing to establish the truth of any factual allegations and properly determine an

Civil No. 10-1251 (FAB)                                                11

appropriate damages award.    See Quirindongo Pacheco, 953 F.2d at 16.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 16, 2011.

>                              s/ FRANCISCO A. BESOSA
>                              FRANCISCO A. BESOSA
>                              UNITED STATES DISTRICT JUDGE